The first case is GreenLatinos v. Suncor Energy, 25-1243, and we'll hear from the appellant. Good morning, Your Honors, and may it please the Court. Kirti Datla on behalf of the appellants. I'd like to reserve three minutes for rebuttal, so I'll keep an eye on the clock. Because the briefing discusses many technical Clean Air Act claims, and because the parties have very different views about how the Diligent Prosecution Bar should work here, I think it'd be helpful to take a step back and lay out what's at stake here. So to do that, with the Court's permission, I'd like to take two and a half minutes to walk through one of our claims, explain how the Diligent Prosecution Bar analysis should work, and explain why getting it right matters. So Claim 21 is at Appendix 78, and it's based on a MACT regulatory requirement that flares, which are the tall stacks you can see at the refinery with plumes coming out of them, meet a specific numeric heating requirement so that they burn hot enough to burn off hazardous air pollutants. As you know, our view is that the bar applies only if the government has an active civil action, and here there is only a closed one. So I'll focus instead on the next two requirements of the Diligent Prosecution Bar. First, we read the act to Bar Claim 21 only if the government's civil action seeks to require compliance with this standard. So the relevant question here is whether the United States' suits sought to require compliance with this minimum heating value. Can I stop you? I just want to make sure that I'm not misunderstanding. Let's say the EPA or the state imposes an action for fines. That would certainly be included, wouldn't it? It wouldn't, when you say it suits to enforce, you're not speaking solely, you're saying that that's confined to injunctive relief. That's right. So the requirement is an active suit. It's sort of irrelevant for that purpose, what relief the United States is seeking. Okay, thank you. So the relevant question here is whether the United States' suits sought to require compliance with that minimum heating value. The party's charts below debated this point. This is at Appendix 1118 and 2078. Suncor's argument was only that the consent decrees mention, quote, similar requirements in different regulations. And we explained that those other regulations don't actually contain a numeric minimum heating value and that these max standards didn't even exist at the time of disagreement. But I read its opinion to have accepted that similarity is enough for these purposes. And that was wrong. And it's important that this court say so. It would mean that if the government sues to address noncompliance with one specific standard, that would bar not just duplicative suits, but additive suits to enforce, for example, stricter standards or standards related to different requirements that address harms from different pollutants, especially in the context of a consent decree that doesn't have a termination date. This would make the citizen suit provision largely illusory for the nation's largest polluters like this one. Counsel, can I ask you, I will phrase this as a type of threshold question, which is how should we be thinking about this limitation in the statute? Is it jurisdictional? Is it an affirmative defense? And how do we place the burdens? So this court in Continental Carbon said in passing, and what I think we can call a sort of drive-by statement, that the requirement is jurisdictional. That was before the Supreme Court's decision in Arbaugh, after which I think my count is six or seven of your sister circuits have held that various diligent prosecution bars are not jurisdictional. They're just sort of ordinary claim processing rules. And so I think the way you would treat it is like any other sort of affirmative defense that gets litigated on that basis. I don't think it makes a difference here because I think the real way it would make a difference is if there was some dispute about the evidence that you could consider, where on 12b1 you might be able to bring in new evidence, but on 12b6 you only consider the evidence in the complaint or in documents you can take judicial notice of. And here I think we all agree on the set of documents at issue. All right. So as to the third element of the diligent prosecution bar, the diligence element, even if you assume that the United States' suits here were trying to require compliance with the same standard in claim 21, so again just sticking with this one claim, diligence doesn't exist on these facts. This is the rare case where we have more than a decade of evidence that the government's plan of action isn't securing compliance. There is nothing left to do under the consent decrees except to comply. And yet as the 2024 notice of violation says at Appendix 1746, we are in a cycle where Suncor violates its requirements and administrative order issues, and the next year Suncor violates again with no end in sight. Under similar logic, the Seventh Circuit in Milwaukee Rivers, the First Circuit in Prasa, and the Sixth Circuit on Bunk and Jones said that diligence doesn't exist. Well is that logical? You know, we have a lot of criminal cases where defendants get very severe criminal penalties and they are recidivists, and we see them and of course district courts see them over and over. Is the fact that Suncor has, in your view, continued to violate the pollutant requirements, is that really logically indicative of a lack of Suncor's persistence in violating the requirements? Yeah, so I'll say two things maybe. So first, I think the Seventh Circuit's decision in Milwaukee Rivers is pretty helpful on this point because it says when you have a consent decree that is sort of so long ago, one of two things, and violations are still occurring, one of two things is happening. Either the way the kind of solution that the compliance with the standards at issue or the reason for the violations persisting is something that that original solution didn't anticipate but obviously hasn't been addressed, and in either case it's not diligence. I think maybe another way to put it is just doing something isn't diligence. If after 10 years Suncor's pattern of violation hasn't changed and neither has the government's conduct or attempts to solve that problem, then that's not diligence. What might be a harder case, but we don't have any evidence of here, is that the government kind of every time this happened ratcheted it up, you know, went back to the consent decrees, filed a contempt order, filed a new lawsuit, you know, instead of imposing stipulated penalties, imposed the civil penalties under the statute, which have a much higher maximum daily rate. You know, that's the kind of thing where I mentioned in this cycle. So the last thing I'll say on diligence as to kind of running through this claim is that reaching a different result than your kind of sister circuits on similar facts here would mean that Suncor can just keep violating, keep paying stipulated penalties that to us seem like it's cost of doing business at this point, and our clients will suffer. And the declaration supporting our standing documents go through how our clients are kind of checking air quality alerts before they allow their children to play outside, before they decide whether to open the windows in their homes. These are kind of everyday daily impacts, and we think Congress enacted the citizen supervision precisely so they wouldn't be helpless in a situation like this. So I think the upshot of this discussion so far is that the simplest way to resolve this case might be to assume that the United States' suits trigger the bar, assume that maybe some of our claims seek to enforce compliance with similar standards as the U.S., and say, for any of those claims, diligence doesn't exist here because it's been more than a decade since the last requirement of the consent decree passed. When you say assume similar standards, I'm going to refer back to comments you made at the beginning of your argument that it has to be the same standard. So you're not conceding similar is sufficient, are you? Yeah, if I misspoke, I apologize. Assume that they seek to require compliance with the same standards, and on that assumption, that would mean that the United States has a 20-year-old solution that we have over a decade of evidence saying it's just not working. So if we can hone in on the diligence for a moment, because as I understand it, these dockets in the Southern District and Western District of Texas are still active, and even as of August of last year, there were status reports being filed regarding the consent decree. But as I understand your argument now, your overall point is, regardless of whether or not there are occasional filings on these dockets, it's not sufficiently diligent because there's still so much gap in terms of compliance and then the enforcement lagging behind. Does that capture your argument? That's right. I mean, I think we probably disagree that they're active. Like, the cases are closed. You would need to move to reopen the judgment if you wanted to do anything in these cases. The status reports aren't active litigation seeking to decide whether or not violations are happening. But even setting that aside, I think we would agree with what you said as to diligence. Like, one helpful way to think about diligence in the case law is, is the government solution capable of requiring compliance with the standards it's trying to achieve compliance with? And you can think of the cases as falling on a spectrum. So the heartland of the and a person sues right afterwards. So they're kind of two active suits. And the person suing afterwards, you know, kind of is at the end of the day, second guessing the government's choice. You know, usually there's a proposed consent decree. Usually they're not happy with it. And that's the debate. And at that stage, it's really hard to have a basis to say, well, we don't know if the solution is going to work. We don't know if it's capable of requiring compliance. It's too to tell. There are institutional competence reasons. We don't take any issue with that. But this is really the most extreme set of facts that would exist in the case law. And we think at the opposite end of the spectrum, it's not, it just isn't reasonable to find diligence. So does your argument also depend upon us making a finding that any administrative actions that have happened do not fall within the umbrella of a diligent prosecution? Yeah. So I want to be very clear about what the dispute is between us and Suncor on this point. So, and maybe I'll simplify it down as much as possible to show what I think the dispute is. So if there is a civil action, and I guess we'll just call it the consent decrees for the sake of this answer. If there are later administrative actions that are actually enforcing the consent decree, we think you can take that into account as to diligence. So imagine there is a consent decree that covers just one claim and later administrative actions cover that one claim from the consent decree, but also a second entirely unrelated claim. It's totally fair game to say that a claim, one of our claims that is that same first claim that's both in the consent decree and in the administrative document, that's all relevant to the diligent prosecution bar. What I think Suncor is trying to do with its emphasis on the 2024 notice is to say as long as there is an administrative document that has both of those claims in it, the bar applies to both of those claims, even though the second claim was never part of any judicial action. And that's where we disagree because the Clean Air Act just doesn't have an administrative diligent prosecution bar. Kevin, stop her clock. Okay, thank you. I do have, but yeah, don't leave yet. Did you have another question? No, go ahead. I did have a question, and that is based on what you just said, are you then acknowledging that the consent decrees, if they were enforceable through an administrative proceeding, would be considered part and parcel of those judicial actions to enforce the standards? So I think if this court is at the stage where it's considering the consent decrees, then it will have already decided that there is an active civil action that is the consent decrees. And the reason the consent decrees are active is because they are being prosecuted. If it was just the consent decree and nothing happened afterwards, I think everyone would agree that the diligent prosecution bar wouldn't apply. So if you're in a situation where you've disagreed with us and you've said what matters is a consent decree counts and the reason it counts is because there are still active actions taken to enforce the consent decree, then at that point we're willing to have the discussion about whether the administrative enforcement is enough. I had thought from your briefing that you had made two distinct arguments, and so sorry to belabor this, but this is really helpful to me. So I thought you were arguing that the consent decrees were over, that those can't be considered ongoing judicial actions to enforce the standards. And you said in say the 2024 notice of violation, a separate administrative mechanism which the Supreme Court relies on. And I thought you had been arguing in your briefs that those would not count as a judicial action because those are administrative mechanisms. But it sounds like that's not what your argument is, is that if the two consent decrees contemplated administrative actions filed in administrative proceedings to enforce the underlying obligations embodied in the consent decrees, those would count as long as the consent decrees and the administrative proceedings were both strapped to an underlying obligation that was memorialized in both, right? Yeah, so I think I agree with the last thing you said, but I just want to be very clear because when we discuss this in the briefs, Suncor seems to take this as a concession, and I don't want that to happen right after I sit down. So the dispute here is really as to anything in the 2024 notice of violation that cannot be linked back to the consent decrees. That's irrelevant. None of our claims related to that count. And there are real disputes. These documents are very precise about when they're enforcing a consent decree provision versus something else. And there are real disputes that aren't kind of cashed out on district court's opinion about which standards are at issue. All right, thank you. Well, I'm confused now. I thought you were saying that the absence of new litigation that was a violation. Secondly, that the various items that were covered in the earlier consent decree were not the same things that you were arguing about today. Now, why do we hold on that? So I don't think you're wrong, but let me repeat it back just to make sure we're on the same page. So our first line argument is and remains that there isn't an action in civil court, and that should end the inquiry. But we recognize this court might not want to decide the case on that basis. And so our second line argument has been and remains that none of the claims at issue are seeking to enforce compliance with the same standards as the United States' suits. And our third line argument is even if you disagree with us about any of that, diligence doesn't exist. Good morning, Your Honor. My name is Hugh Gottschalk representing Suncor. With me at counsel table are John Bernachek and Carlos Romo. It is clear that the appellants would prefer the agencies to take a more aggressive strategy to seek additional remedies that they have not so far This court in Carr, however, made clear that the strategies of the agencies need not coincide with what the plaintiff's citizen suit would like. And the fact that the plaintiffs in the citizen suit are urging more aggressive remedies is not the basis of decision. The decision is based on diligent prosecution. It is based on deference to the agencies, which this court in Carr has said is to be required. And as this court did in Carr, the citizen suit should be dismissed because the agencies are pursuing diligently and in their own judgment the best way to proceed. The same standards. The same standards. And that's exactly what I was going to get to. Sorry. No, that's all right. There's a little bit, I think, slight of hand going on here. The same standards and limits are the words of the statute. The same standards are applicable throughout both the consent decrees and the consent decree enforcement actions. They are the RAC standards, the NSPS standards, all those Clean Air Act acronyms permeate the whole thing. This is all about the same standards. The argument they're making is that the district court said substantially similar emissions violations. And they're jumping on substantially similar as being different than the statute. But again, this court in Carr made clear the case, the claims, the details of the cases don't need to be the same. Boy, that is a loose interpretation of Carr, I thought. Well, you know, what Carr said is, and you tell me if I'm misremembering it, is that the court said, well, it doesn't, they don't, the agencies don't have to pursue as many violations. So if there's a benzene emission that is violating the standard every single day of the year, and a group like Green Latinos asserts a violation for three days, well, and the agency wants to pursue it for one day, that doesn't matter. But benzene is benzene. And so if, hypothetically, if the consent decrees say nothing about violation of benzene emissions, and the agencies, and say in the 2024 notice of violation, is pursuing at least a notice of violation, disagree a bit whether that's litigation, and is pursuing a violation of benzene, that is at least different than what the litigation was in the two court proceedings, correct? I would agree, but I think that Carr went significantly further than that. And if the basic facts are Carr, the agencies went out and looked at 37 well-permitted sites in the Potato Basin in Oklahoma for permit violations, and they chose to pursue 21 out of those 37 sites. And they pursued it down an agency enforcement path, and the citizens who came along and said, but we're going to pursue the other 16, because the agency didn't pursue these other 16 well-permit sites in the Potato Basin in Oklahoma. And Carr said, this court said, no, the agency went out, looked at these issues, we don't really understand why they took 21 and didn't pursue the other 16, but they are enforcing the Clean Air, or the Clean Water Act in that case, and we are going to defer to the discretion of the agencies, not only on the in that case it was locations, analogizing to this case precise equipment and other things related to the refinery. The agencies have entered orders and enforcement orders relating to the Suncor Denver refineries, and our fundamental argument based on Carr is this court should defer to the discretion of the agencies and how they're tackling this problem. Not to prosecute? If they investigate it, not prosecute? To not prosecute, or to prosecute one and not the other, because if the limits on this equipment were enforced, it would have a spillover effect on that piece of equipment. So the diligent prosecution bar would prohibit an entity like Ring Latinos from pursuing an action that the agency had diligently investigated and decided not to prosecute, and we're just using a fiction and calling it a diligent prosecution bar. No, I think the diligent prosecution is of the standards, the standard of the Clean Air. You're saying that they investigated and didn't prosecute. Let me ask it a different way. The FBI decides, Bob Bacharach, we think you are dealing methamphetamine, and they investigate and they decide, well, we're not going to pursue this. Have I been prosecuted? I've been investigated. You've been investigated. But I haven't been prosecuted. It's a diligent prosecution bar. And how that diligent, well, how that diligent prosecution proceeds, whether in the criminal context you're using or in the environmental context, is what the discretion of the agencies is about. There are citations from various cases that talk about maybe the fines should be lower because you can get more remedial relief, more injunctive relief over here in a consent decree. The court should just not get into, and I'll use opposing counsel's example, Claim 25. Let's look in the middle of all of this, Claim 25. Here's what we think should happen on Claim 25, or I'm sorry, 21 is the one she used. And the cornerstone of this is the agencies are diligently prosecuting the standards of the Clean Air Act relating to Suncor's dental refineries. For the same pollutants? For the same pollutants. And let me just jump ahead to there. Well, before you do that, I accidentally talked over my colleague. Don't lose your train of thought. Okay. Is that okay? Yeah. I accidentally just talked over Judge Kelly. Yeah, I wanted to answer the question. In Carr, the government had submitted a proposed consent decree. The prosecution was diligent. It was not ongoing. And here we don't have that. We don't have anything from the time the consent decree was entered X number of years ago. As I understand it, there's been nothing since then other than just a couple of enforcement deals, again, several years back. How can that be considered diligent? So we've now moved to diligent prosecution, which I'll get to, and then I'll get back to your question. We believe there's been, the record is clear, there's been diligent prosecution. The consent decrees you referred to, which are quite a few years back, you're correct, have continuing jurisdiction provisions that allow further actions under the continuing jurisdiction of the court in those cases. There is admittedly a significant number of years where there's not. What has been done? I want to know what has been done that qualifies as diligent in this case? In the past five years, there have been four agency different, have commenced different actions, the 24 notes of violation Judge Backrack identified already, but they're in the record very clearly. There are four actions that have, I'm sorry, five actions that have been taken in the last five years, all of which recite that we are enforcing the consent decree from years back. And for example, the most graphic example I can give is there are stipulated penalties. Those five administrative actions pursuant to the, taken pursuant to the consent decrees, continuing jurisdiction, and reciting that they are pursuant to the consent decrees, imposed stipulated penalties. And those stipulated penalties come from the consent decrees. The authority to impose stipulated penalties, they were stipulated going back to consent decrees. So without question, Judge Kelly, there is a significant gap of years where there's nothing in the record of anything happening. There's no record of enforcement actions, but on the other hand, there's no record of violations or anything else. There's just sort of a black box period, followed up by, starting in 2020, five administrative consent decree enforcement actions, which recite they are taking action pursuant to the authority granted in the consent decree. And I would say, if I can say one last thing on diligent prosecution, several of the cases, Sabalo and others have said the consent decree is not the be all and end all of due diligence or diligent prosecution. You have to look at what has the agency done to enforce the consent decree. I don't think the Green Latinos disagrees with on that. And my ultimate answer to your question, Judge Kelly, is there are older consent decrees, sort of a black box period where there's no violations or no agency actions in the record, and then five or six years of agency actions referring back to enforcement of those consent decrees. And that is the due diligence. It covered the exact same, it's your position, that these enforcement actions over the past year covered the exact pollution issues, items that were complained about currently. I was under the impression that some of the items didn't even exist back when the consent decree was entered. Does it cover everything? I'm sorry? Does it cover every chemical issue that might come to pass? The consent decrees and the recent consent decree enforcement actions of the agencies cover all the chemicals. They address all the claims that Green Latinos asserted. I want to give just one example, if I can. There's a claim, 25, in the citizen suit complaint related to heater 2101. And I don't want to, I'm getting into the real details, I've encouraged you not to get into, but in response to the council's argument, that claim, 25, is the same claim, lock, stock, and barrel, for the claim that was asserted in the 2025 NOV, 2024 NOV, that heater 2101 violated the nitrous oxide standard of the Clean Air Act and of the consent decree. And the agencies in 2024, said we are going to enforce the consent decree by bringing a claim for nitrous oxide emissions relating to heater 2101. Their claim, 25, asserts the exact kind of claim for nitrous oxide emissions and that claim represents 80 percent, 80 percent of the violation days that they in their whole complaint. Where in the consent decrees will we find the governmental claims for the violation of this standard for nitrogen oxide emissions? You will find it in... I know it's in the 2024 NOV, but you're representing that it's also in the consent decree? Yes. And it's not a test, but you're representing that if we scour the consent decrees, we will find the exact same, to follow up on my colleague's question, the exact same standard and the exact same allegation for the exact same chemical, the nitrogen oxide emissions from the same fuel combustion equipment. I don't want to sit here and say, stand here and say with precision exactly what you just said. What I can say with precision is that the plaintiffs, the citizens who plaintiffs have said that the consent decree violates, that this heater 2101 violates the consent decree. I think there's actually some ambiguity on the consent decree on that point, but they have alleged that heater 2101 is in violation of the consent decree on the nitrous oxide standard. That's their claim 25. That's what they've said. And that's the same thing that is the part of the pending 24. So, let me get your question in just one second. Let me just follow up. So you're saying that the consent decree, when it created a standard, the creation of that standard somehow metaphysically morphed into a prosecution of a violation of a standard that didn't even exist until the consent decree was signed by the judge. A consent decree does two things. It constitutes the memorialization of a prosecution of a pre-existing violation, and it sets a standard. And so when you, what you said to me, I'm just not following. So they can say, Green Latinos can say, yeah, it violated the standard that was created by those decrees, but that doesn't mean that the prosecution of those actions that resulted in a consent decree alleged a violation from the same heaters or boilers for the same standard for nitrogen oxide emissions. I'm just not following. What I'm saying, I think, different than what you're saying, Your Honor, is this is a diligent prosecution bar. The question is whether the citizen suit plaintiff is bringing anything to the table that's a different standard, a different issue, whatever. And so what I'm doing, I think, slightly different than what you're doing, Your Honor, is I'm saying you need to compare their citizen suit complaint, Claim 25, with the 2024 notice of violation. And those are identical. Those are identical, and they represent 80 percent of the violation days covered by their lawsuit. So this, I didn't just pick one that sort of works for us. It's a big issue. How the consent decree enforces this, whether the agencies are going to win or lose on the kinds of issues you're talking about, I'm not prepared to address today. But what I'm saying for the diligent prosecution bar, their claim is exactly the same. Counsel, there's a lot to unpack here, so bear with me for a moment. Yes. You started with the example of Claim 25 by saying, I'm going to get into details that I don't think you should get into. Then a moment ago, you just said we need to compare Claim 25 back to some of the standards in the past as to what has been enforced. So I think there may be some tension there, but I want to go back to something you said almost at the beginning of your argument. You said the statute says the same standard or limitation, but of course, it doesn't include the word same. It does not include the word same. I think everybody implies it, but I agree it does not say that. But part of the problem, I think here, if I understand Green-Latino's argument, is the district court says essentially the allegations are identical or substantially similar. So it got the standard wrong, and then this whole discussion we just had about a comparison between claims, all of that is absent in the district court order. The parties, as I understand it, went to some length in the motion to dismiss in Exhibit 4 to actually have a chart and say, here are the claims. In the response, Green-Latino's reasonably added their own column and said, well, here's how we would do that comparison. So the parties are doing a lot of work here to compare. The district court did none of that, but yet I think arguably applied the wrong standard. So that's where I think we are. But what is your position as to whether we should do the hard work of comparison, whether we should remand to the district court to do the hard work of comparison, or whether none of that needs to be done? I've got a couple answers, but I'll start there. None of that needs to be done. That's my short answer. The slightly longer answer, Your Honor, is Exhibit 4, is that work? The judge cited Exhibit 4. He didn't go through, and on line seven you have this, and he didn't go through a point by point, but he cited Exhibit 4. And so I think it's fair for this court to say he reviewed it and reached his conclusion based at least in part on Exhibit 4. I think that the dialogue that counsel had about the claim she picked, 21, and I had about claim 25, is exactly why this court needs to defer. I don't think that you should get into those level of details. If you conclude that notwithstanding the discretion afforded to the agencies, you want to dig into it, I wanted to bring to your attention a claim that is very different than the one she picked. But to answer your question, I don't think you need to do that. I think under various cases, Friends of Milwaukee and others, the boundary of discretion is collusion or bad faith. The cases which say, I don't find diligence here, typically say there's something going on that leads me to think there's collusion or bad faith, and the agencies just weren't acting in good faith, if you will. There's no allegation that that's going on here. And so here, again, to answer your question, I think that the discretion afforded to the agencies, the deference afforded to the agencies, makes clear you don't need to do, and in fact shouldn't do, the detailed look of that Exhibit 4. If you want to, we've given you Exhibit 4 to show that overlap. To answer your question, I don't think you need to. Yeah, so also, we have here a citizen suit brought against you, but there's another party we haven't heard from. Of course, we're talking about a diligent prosecution brought on behalf of the agency and or the state. Do you have a position as to whether or not it would be beneficial for our disposition in this case to invite particularly the United States to weigh in on this question? I guess I don't have it. If you feel that that would be helpful, we certainly are not opposed to it. I think you can make a decision on diligent prosecution on the record before you. I would make one follow-up point to that, that they don't even argue, and I would point you to their reply brief, I think it's page 25, that the record doesn't indicate a lack of diligent prosecution. What they say is, this is a motion to dismiss, we've alleged non-diligent prosecution, and so in a Rule 12 context, you've got to take that as a given. And our response to that is, that's a legal conclusion, you have to assume facts, but you've got a record of regulatory action, and I don't think you have to, 12b.6 does not require you to accept their legal conclusions at face value when the record in front of you, I think, demonstrates diligent prosecution. If I can have 15 more seconds, I've been read for a while, but. Well, do you have any more questions? Judge Kelly, do you have any more questions? No, thank you. You can have 15 seconds. Thank you. I want to end with a quote from Galtney, the U.S. Supreme Court case, if citizens could file suit in order to seek civil penalties that the administrator chose to forego, the administrator's discretion to enforce the act in the public interest would be curtailed considerably. That's exactly why we believe this Court should defer to the expertise of the agencies. Thank you very much. Thank you. Okay, we'll hear from the appellant. I think you have two minutes and 35 of rebuttal. All right, thank you. I think I'm going to try and make five quick points. So first, I want to start with where opposing counsel left off with Galtney. I think its defendants favorite thing to do is to try and use that dicta as a blunt instrument. And this Court, in the Continental Carbon case, rejected the idea that you would do so to overcome the plain statutory text. So I think at step one and step two, where I didn't hear a textual argument from opposing counsel, that's sort of irrelevant. The second thing I'll say is about Carr and the discussion that you just had about that case. Judge Bacharach, I think you're exactly right that the position Suncorp takes is an over-reading of Carr for at least two reasons. First, Carr expressly reserves, I think, our step two point at page 1199, where it says plaintiffs in that case didn't preserve an argument before the district court that there was a distinction of the claims at issue, and so it wasn't going to address it. Second, plaintiffs in that case conceded, even as to this discussion about the number of sites at issue, that the government's consent decree covered all the sites that they wanted to cover. So any discussion of a mismatch there would have been dicta in Carr. Next, I want to talk about this idea of deference and maybe just say the kind of extraordinary breadth of what I heard opposing counsel to say. So I heard him to say the reason the 2024 document that they focus on so heavily covers the same claims is because it's NSPS regulations. It's the same pollutant. Just think about the implications of that argument. This is a huge refinery. The NSPS regulations contain requirements for specific sources, specific pollutants, at each of those sources, and there's just hundreds of regulations. And I take Suncorp to be arguing one suit about one of those regulations essentially insulates a refinery like Suncorp from a citizen suit for all time. And that just can't be the rule. It's not the rule. Next, I want to talk about the stipulated penalties because opposing counsel mentioned them, and I think they're actually quite helpful to us. So I want to go back to Claim 21 that I was discussing and just give you two record citations. So first, if you look at the 2023 compliance advisory at Appendix 1818, you will see that when it discusses a violation of the standard in Claim 21, it does not cite that standard as coming from the consent decree. That's in contrast to other statutes, other standards discussed in that document. And then I think it would be helpful for you to compare Appendix 1587, which is from the 2020 compliance order with Appendix 1641. And the comparison there is that that document notes a violation at the first page, imposes stipulated penalties at the second page, and does not impose stipulated penalties for the violation of the standard in Claim 21, which I think is evidence that not even the government considers Claim 21 to be connected in any way to the consent decrees. So I just want to end, if I can, by addressing this idea of sort of how to resolve the case. I think, as I mentioned at the very beginning, it's really important for this court to identify the correct standard at Step 2, the same standard. But I think there's a weird way in which we might agree with something opposing counsel said, which is that you don't need to get into any of this, because any standard that would pass that test would mean that the government has been trying to get Suncor to comply with that standard since the early 2000s and failing. And we think at that point, it's just the furthest case on the spectrum for diligence. And cases like Friends of Milwaukee that's just not diligent. So we'd ask the court to reverse on that basis, or at a minimum, to remand for the Step 2 discussion. Thank you. Judge Kelly, do you have any questions for counsel? I do not. Okay, thank you. This matter will be submitted. I do want to take a moment to thank both counsel. I thought your briefs for both sides and your arguments were absolutely outstanding, so I hope.